| | | |
|---|---|---|
| COMMERCEFIRST BANK<br>1804 West Street<br>Annapolis, Maryland 21401 | * <br> * | IN THE <br><br> CIRCUIT COURT |
| *Plaintiff* | * | FOR |
| v.<br>COTTMAN TRANSMISSION<br>SYSTEMS, LLC<br>201 Gibraltar Road<br>Horsham, Pennsylvania 19044 | *<br>*<br>*<br>* | ANNE ARUNDEL COUNTY |
| Serve On:<br><br>Michael Sumsky<br>201 Gibraltar Road<br>Horsham, Pennsylvania 19044 | *<br>*<br>* | WDQ10CV 670 |
| *Defendant* | * | Case No. C10-148877 |

\* \* \* \* \* \* \*

## COMPLAINT

Now Comes the Plaintiff, ComerceFirst Bank, through its counsel, Lynn T. Krause, Nevin L. Young, and Krause & Ferris, Attorneys, and sues the Defendant, and in support thereof, states as follows:

### FACTS COMMON TO ALL COUNTS

1. The Plaintiff is a commercial bank doing business in the State of Maryland, authorized to do so by the Office of the Commissioner of Financial Regulation.

2. The Defendant is a Delaware corporation with its headquarters in the Commonwealth of Pennsylvania.

2010 JAN 28 A 9: 34
CIVIL DEPARTMENT

3. The Defendant is a franchisor of transmission repair businesses throughout both Pennsylvania and Maryland, including Anne Arundel County, Maryland.

4. The Plaintiff, the Defendant, and a third party, a franchisee known as Calvert Kitchens, Inc. (name later changed to SCP Systems, Inc.), along with Christopher J. Moore individually (hereinafter collectively known as "the Original Franchisee"), entered into a Tri-Party Financing Agreement on October 6, 2005 (attached as Exhibit A, hereinafter referred to as "the Agreement").

5. Under the Agreement, the Plaintiff lent to the Original Franchisee the sum of $270,000.00 for the purposes of purchasing an existing Cottman Transmission franchise in Waldorf, Maryland, and obtaining a new franchise for this purpose, and the Defendant promised to give certain rights, notices, and protections to the Plaintiff.

6. One of the protections extended to Plaintiff was a promise by Defendant that it would give Plaintiff ten days notice of any intention to terminate its business relations with the Original Franchisee, and the Original Franchisee promised that it would give Plaintiff ten days notice of any intention to terminate its business relations with the Defendant, and that the Plaintiff would have a right to cure any default to keep the business operating rather than having the franchise terminate.

7. The loan was further secured by a first lien UCC1 Financing Statement filed with the Maryland Department of Assessments and Taxation, which attached a first

lien to all inventory, accounts, general intangibles, chattel paper, equipment, fixtures, and any other personal property assets of the Original Franchisee. (See Exhibit B).

8. It appears that at some time in or around October of 2008, the Original Franchisee, having encountered business difficulties, entered into an agreement with the Defendant to sell all of the assets of the Original Franchisee to a replacement franchisee, known as Ken Barker, d/b/a Cottman Transmission Systems. There was no notice given to the Plaintiff as required by the Tri-Party Financing Agreement.

9. In December, 2008, Plaintiff noted that the Original Franchisee had fallen into default on its loan. Unable to contact the Original Franchisee by telephone, in December of 008 or early January of 2009, the Plaintiff sent its employee, Gregory Krumm, along with its attorney, Lynn T. Krause, to the Waldorf location of the Cottman Transmission business, and met with Mr. Barker (hereinafter "the Replacement Franchisee"), who advised them that he had bought the business and all of the assets of the business from the Original Franchisee.

10. Mr. Barker further stated that he had been assured by both the Original Franchisee, and by the Defendant, that there were no liens or other encumbrances on the business equipment or location, and that he has purchased the business "free and clear" of any encumbrances, and in fact Mr. Barker proceeded to pay monies directly to the Defendant, while paying nothing to the Original Franchisee, who purported to convey to him the entire business, although that transaction was null and void as a matter of law.

11. Mr. Barker was and is apparently a successful Cottman franchisee who had run successful Cottman businesses before buying the Waldorf location, and was specifically recruited by Defendant for the purpose of taking over the Waldorf Cottman Transmission business.

12. Upon information and belief, as part of the negotiations between Defendant, the Original Franchisee, and the Replacement Franchisee, the Replacement Franchisee agreed to make direct payment also to the landlord who owned the business premises, as a condition imposed by the Defendant, to cure arrearages in the rent.

13. Throughout all of the negotiations leading to the termination of the Original Franchisee, and the installation of the Replacement Franchisee, there was no notice given to the Plaintiff that any of those events were occurring.

14. Obviously, those representations by Defendant and the Original Franchisor were false, as demonstrated by the UCC1 filing statement attached as Exhibit B hereto.

15. The Plaintiff has made demand upon the Defendant for compensation or to work out some other remedy, and has been rebuffed, with Defendant claiming no responsibility as a matter of law, and claiming that the Plaintiff's only recourse is to pursue the lien interest against the equipment sold by the Original Franchisee to the Replacement Franchisee, which the Plaintiff has in fact done.

16. However, Defendant ignores the fact that the Plaintiff had a lien interest on not only the inventory and equipment, but also on all intangibles, including the value of a

Cottman Transmission franchise in that location. The Defendant, in derogation of that lien interest, terminated the franchise with the Original Franchisee, without notice to the Plaintiff, and awarded the rights to operate at that same location, goodwill, and set of rights under the franchise agreement, to another Cottman franchisee.

## COUNT I
## BREACH OF CONTRACT

17. The Plaintiff incorporates paragraphs 1 through 16 as set forth above, as though set forth fully herein.

18. The Defendant had a duty under the Tri-Party Financing Agreement of good faith and fair dealing, and to give notice in the event that a default event occurred or termination was contemplated.

19. The Defendant failed in that duty, and as a result, the value of the business and both its physical and intangible assets, which were encumbered by a lien held by Plaintiff, were either wrongfully taken by Defendant and awarded to a new franchisee, or were otherwise wrongfully transferred to a new franchisee, or wrongfully placed in the possession of a new franchisee, even though said transfer was invalid as a matter of law.

20. Had Defendant complied with the notice provisions of the Agreement, as well as acted in good faith and in fair dealing under the Agreement, the Plaintiff could have taken action to cure the default, and to preserve its interest in the property.

21. However, the Defendant ignored Plaintiff's rights under the Tri-Party Financing Agreement, to the great detriment of Plaintiff.

22. The value of the Cottman Transmission business in Waldorf upon which Plaintiff held its lien is estimated to be more than the total amount of the loan underwritten by Plaintiff, in the amount of $270,000.00.

23. The Plaintiff incurred and will incur substantial attorneys' fees and costs in an effort to collect under the lien interest against the Replacement Franchisee, as an incidental or consequential damage of the breach.

WHEREFORE, the Plaintiff prays:

A. That judgment be entered against Defendant and in favor of Plaintiff in the amount of $270,000, plus reasonable attorneys' fees and costs incurred in collecting against a third party, namely, the Replacement Franchisee, together with the costs of this action, less any amounts recovered by the sale of the assets presently wrongfully in the possession of the Replacement Franchisee.

B. For whatever other relief the justice of the cause demands.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT

24. The Plaintiff incorporates paragraphs 1 through 23 set forth above, as though set forth fully herein.

25. The Defendant knew of the contract between the three parties, namely the Defendant, the Original Franchisee, and the Plaintiff, and without privilege to do so, interfered with that contract, inducing a breach of the contract by the Original Franchisee, to the Plaintiff's detriment, by locating a Replacement Franchisee, by ignoring the duty to inform Plaintiff of the Replacement Franchisee or of default by the Original Franchisee under the Agreement, and by representing to the Replacement Franchisee that there were no liens or encumbrances upon the business.

26. As a result of that interference, the value of the business and both its physical and intangible assets, which were encumbered by a lien held by Plaintiff, were either wrongfully taken by Defendant and awarded to a new franchisee, or were otherwise wrongfully transferred to a new franchisee, or wrongfully placed in possession of a new franchisee, even though said transfer was invalid as a matter of law.

27. The value of the Cottman Transmission business in Waldorf upon which Plaintiff held its lien is estimated to be more than the total amount of the loan underwritten by Plaintiff, in the amount of $270,000.00.

28. The Plaintiff incurred and will incur substantial attorneys' fees and costs in an effort to collect under the lien interest against the Replacement Franchisee, as an incidental or consequential damage of the breach.

WHEREFORE, the Plaintiff prays:

A.  That judgment be entered against Defendant and in favor of Plaintiff in the amount of $270,000, plus reasonable attorneys' fees and costs incurred in collecting against a third party, namely, the Replacement Franchisee, together with the costs of this action, less any amounts collected from that Replacement Franchisee.

B.  For whatever other relief the justice of the cause demands.

## COUNT III
## UNJUST ENRICHMENT

29.  The Plaintiff incorporates paragraphs 1 through 28 set forth above, as though set forth fully herein.

30.  The Defendant, by inducing the Replacement Franchisee into replacing the Original Franchisee, without informing the Plaintiff of the contemplated replacement, was unjustly enriched, in that Defendant was able to convert a losing business proposition and debt due and owing to Defendant into a profitable venture, at least partially at the expense of the Plaintiff, who was deprived of its lien interest in the franchise and other intangible assets, and was forced to pursue an attachment against the equipment wrongfully placed in another's possession.

31.  As a result of the unjust acts of the Defendant, the value of the business and both its physical and intangible assets, which were encumbered by a lien held by Plaintiff, were either wrongfully taken by Defendant and awarded to a new franchisee, or were otherwise wrongfully transferred to a new franchisee, or wrongfully placed in possession of a new franchisee, even though said transfer was invalid as a matter of law.

32. The Defendant is estimated to have been unjustly enriched by this transaction, at the expense of Plaintiff, in the amount of $270,000.00.

WHEREFORE, the Plaintiff prays:

A. That judgment be entered against Defendant and in favor of Plaintiff in the amount of $270,000, less any amounts collected from the Replacement Franchisee.

B. For whatever other relief the justice of the cause demands.

Respectfully Submitted,

_____
LYNN T. KRAUSE

_____
NEVIN L. YOUNG

Krause & Ferris
196 Duke of Gloucester Street
Annapolis, Maryland 21401
410-263-0220
*Attorneys for Plaintiff*

TRUE COPY,
TEST: Robert P. Duckworth, Clerk
By: _____ Deputy